**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NICOLE URQUHART-BRADLEY, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | Case No. 1:18-cv-2213-RCL |
| ) | |
| CUSHMAN & WAKEFIELD, INC., ) | |
| ) | |
| *Defendant.* ) | |
| ) | |

## MEMORANDUM OPINION

In September of 2018, plaintiff Nicole Urquhart-Bradley brought this lawsuit against defendant Cushman & Wakefield, Inc. ("C&W"), alleging various counts of race and gender discrimination under 42 U.S.C. § 1981 and the District of Columbia Human Rights Act ("DCHRA"). ECF No. 1. In January of 2019, Ms. Urquhart-Bradley filed an Amended Complaint which added supplementary DCHRA claims as well as new claims under Title VII of the Civil Rights Act of 1964. ECF No. 17. In May of 2020, the Court granted Ms. Urquhart-Bradley leave to file her Second Amended Complaint, which includes new allegations of retaliation in Counts VI, VII, and VIII. ECF No. 66. C&W has filed a motion to dismiss these three counts for failure to state a claim. ECF No. 67. Upon consideration of that motion, the opposition (ECF No. 71), and the reply (ECF No. 74), the Court will **DENY** the motion.

## BACKGROUND

Ms. Urquhart-Bradley is an African American female who worked at C&W from 2003 until her termination in January of 2018. ECF No. 66 at ¶¶ 22-23. She believes that her termination was the result of race and gender discrimination. *See generally id.* At issue in this

1

Memorandum Opinion are Counts VI, VII, and VIII, which allege that C&W retaliated against Ms. Urquhart-Bradley in violation of 42 U.S.C. § 1981, the DCHRA, and Title VII. *Id.* at ¶¶115-32. Specifically, she alleges that after C&W learned of her protected activity (i.e. her plans to bring race and gender discrimination claims against C&W), it prevented her from obtaining a new job with a non-competitor of C&W. *Id.* at ¶¶ 19-20. C&W argues that Ms. Urquhart-Bradley has not alleged facts sufficient to meet the legal standard for retaliation, and thus the Court must dismiss Counts VI, VII, and VIII under Federal Rule of Civil Procedure ("Rule") 12(b)(6).

## LEGAL STANDARD

Rule 12(b)(6) requires courts to dismiss any case wherein the plaintiff has failed to state a legal claim upon which relief can be granted. To survive a motion to dismiss for failure to state a claim, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When deciding a motion to dismiss under Rule 12(b)(6), courts must construe the pleadings broadly and assume that the facts are as plaintiff alleges; however, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Additionally, courts are not obligated to "accept as true a legal conclusion couched as a factual allegation." *Papsan v. Allain*, 478 U.S. 265, 286 (1986). Essentially, the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. It is important to remember that "[a] motion to dismiss for failure to state a claim upon which relief can be granted tests not whether the plaintiff will prevail on the merits but instead whether or not [s]he has properly stated a claim." *Kilpatrick v. Riley*, 98 F. Supp. 2d 9, 13 (D.C. Cir. 2000).

## ANALYSIS

Because the Court must make all reasonable inferences in Ms. Urquhart-Bradley's favor at the pleading stage, the Court cannot grant C&W's motion. A *prima facie* case of retaliation requires that the plaintiff set forth facts which, if true, demonstrate that: (1) she engaged in a protected activity; (2) the employer took adverse employment action against her; and (3) a causal connection existed between the two. *See Walker v. Johnson*, 798 F.3d 1085, 1091-92 (D.C. Cir. 2015). C&W challenges whether she has established the first two elements. At the pleading stage, however, Ms. Urquhart-Bradley is not required to plead *every* fact necessary to establish a *prima facie* case. *See Jones v. Air Line Pilots Ass'n, Int'l*, 642 F.3d 1100, 1104 (D.C. Cir. 2011) (explaining that "an employment discrimination plaintiff is not required to plead every fact necessary to establish a *prima facie* case to survive a motion to dismiss"); *Johnson v. Mao*, 174 F. Supp. 3d 500, 510 n.8 (D.D.C. 2016) (noting that a plaintiff need not make out a *prima facie* case of discrimination at the pleading stage). Rather, the Court must examine her Second Amended Complaint and determine whether—when all reasonable inferences are drawn in her favor—there are sufficient facts to make out a legally cognizable retaliation claim. For the reasons set forth below, the Court finds that under a liberal reading of the Second Amended Complaint, Ms. Urquhart-Bradley has sufficiently alleged that she engaged in protected activity and that C&W took an adverse action against her. Therefore, the Court cannot dismiss Counts VI, VII and VIII for failure to state a claim.

## I. THE SECOND AMENDED COMPLAINT SUFFICIENTLY ALLEGES THAT MS. URQUHART-BRADLEY ENGAGED IN PROTECTED ACTIVITY.

C&W begins by challenging whether the Second Amended Complaint adequately alleges that she engaged in protected activity. The only part of the Second Amended Complaint which

truly addresses the first element of retaliation is Paragraph 19, which reads: "Stunned by her abrupt and baseless termination, Ms. Urquhart-Bradley retained counsel, through whom she notified [C&W] of her claims on or about January 21, 2018." ECF No. 66 at ¶ 19. Although this allegation technically does not state how her attorney described those claims to C&W (i.e., did her attorney tell C&W that the claims were based on alleged race and/or gender discrimination?), it is reasonable to infer that Paragraph 19 is referring to claims of race and/or gender discrimination. This is especially true in light of the fact that Paragraph 19 directly links these claims to her "abrupt and baseless termination." The Court is hard-pressed to think of any other claims that Paragraph 19 might be referring to other than those brought for her allegedly wrongful termination, which are clearly protected.

In arguing that this statement is insufficient to establish the first element of retaliation, C&W cites the D.C. Circuit's holding in *Robbins v. District of Columbia* that the threat of legal action "divorced from any allegation of unlawful discrimination on a statutorily prohibited ground" is not protected activity. 650 F. App'x 37, 40 (D.C. Cir. 2016). *Robbins*, however, was decided at the summary judgment stage, not the motion to dismiss stage. This distinction is critical. Once this case proceeds to the summary judgment stage, Ms. Urquhart-Bradley will undoubtedly need to provide more detail about what exactly her attorney told C&W and whether this sufficiently put C&W on notice that she was engaging in protected activity. At the motion to dismiss stage, however, the Court must read the Second Amended Complaint liberally and make *all* reasonable inferences in Ms. Urquhart-Bradley's favor. Therefore, although it would not be reasonable at the summary judgment stage to assume that the wording in Paragraph 19 refers to legal claims based on statutorily prohibited discrimination, such an inference is reasonable at the pleading stage. In light of this more lenient standard, the Court finds that Ms. Urquhart-Bradley

has alleged facts sufficient to show that C&W was aware that she was engaging in protected activity.

## II. THE SECOND AMENDED COMPLAINT SUFFICIENTLY ALLEGES THAT C&W TOOK AN ADVERSE ACTION AGAINST MS. URQUHART-BRADLEY.

C&W also challenges whether the Second Amended Complaint adequately alleges that it took any adverse action against Ms. Urquhart-Bradley. As this Court has previously held, a negative job reference constitutes an adverse employment action when the plaintiff is able to show: (1) that disparaging comments were made; (2) the person to whom the comments were made; and (3) that the plaintiff was denied employment because of the negative reference. *Simmons v. Cox*, 495 F. Supp. 2d 57, 66 (D.D.C. 2007) (Lamberth, J.). C&W only challenges the first and third elements of this standard. *See* ECF No. 67-1 at 5. In response, Ms. Urquhart-Bradley points to the following statements in her Second Amended Complaint:

- "Upon information and belief . . . C&W went out of its way to undermine Ms. Urquhart-Bradley's employment opportunities. In one instance, a negative reference from CEO of Asia Pacific Matthew Bouw (who, notably, had never supervised or worked closely with Ms. Urquhart-Bradley) was sufficient to torpedo Plaintiff's candidacy for a lucrative position with a non-competitor which had only months earlier tried to recruit her." ECF No. 66 at ¶ 20.
- "The recruiter promptly reached out to Plaintiff to revisit her candidacy for . . . a lucrative executive position at a firm that was not a competitor to C&W." *Id* at ¶ 74.
- "On March 13, 2018, however, a colleague of the recruiter reached out to Matthew Bouw, the former Global Head of Human Resources for Defendant, who had recently been appointed C&W's CEO of Asia Pacific." *Id.* at ¶ 76.
- "While CEO Bouw declined to provide a written statement about Ms. Urquhart-Bradley, he immediately offered to speak with the recruiter by phone." *Id.* at 78.
- "As a result of CEO Bouw's statements about Plaintiff, her promising candidacy for the lucrative position was placed on hold and never revived." *Id.* at 79.
- "Plaintiff's promising candidacy for the position in question was put on hold as a result of statements made to the recruiter by C&W's CEO of Asia Pacific, Matthew Bouw. Plaintiff's candidacy was never revived, and the position subsequently went to another candidate." *Id.* at ¶ 32.

- "Defendant C&W has retaliated against Ms. Urquhart-Bradley in violation of [the applicable statute], going out of its way to undermine Ms. Urquhart-Bradley's employment opportunities as a result of her protected activities." *Id.* at ¶¶ 116, 112, 128.

When viewed in conjunction with one another, these statements allege that C&W took an adverse action against Ms. Urquhart-Bradley. Although the Second Amended Complaint does not set forth the exact statements that CEO Bouw allegedly made to the recruiter, it is reasonable to infer that the statements were disparaging. After all, when assuming that the allegations listed above are true—which the Court must do at this stage—it was only after CEO Bouw spoke with the recruiter that the job opportunity vanished. It is thus reasonable to assume that the comments he made were negative.

Once again, the cases that C&W cites in arguing that Ms. Urquhart-Bradley's allegations are insufficient were decided at the summary judgment stage, not the motion to dismiss stage—and once again, this distinction is critical. For example, in *Mitchell v. Mercedes Benz U.S. Int'l, Inc.*, the Eleventh Circuit determined that the plaintiff's retaliation claim failed because he provided "no basis for the court to determine [that the defendant] provided a negative reference . . . , much less the contents of or intent behind any such reference." 637 F. App'x 535, 539 (11th Cir. 2015). Direct proof of a negative reference and evidence of its precise contents, however, is not necessary until the summary judgment stage, which occurs only after the plaintiff has had a full opportunity for discovery. Once this case reaches summary judgment, Ms. Urquhart-Bradley will of course need to bring forth evidence regarding the actual contents of CEO Bouw's statements to the recruiter. At this time, however, Ms. Urquhart-Bradley has not had the opportunity to take discovery on this issue, which she will likely need in order to obtain more information about the specifics of the allegedly negative reference. The Court believes that a liberal reading of her Second Amended Complaint entitles her to that discovery.

Additionally, the allegations listed above suggest that Ms. Urquhart-Bradley lost the employment opportunity with the non-competitor specifically because of CEO Bouw's statements. Paragraph 32 states, "Plaintiff's promising candidacy for the position in question was put on hold *as a result of* statements made to the recruiter by C&W's CEO of Asia Pacific, Matthew Bouw." ECF No. 66 at ¶ 32 (emphasis added). Again, while at the summary judgment stage it would behoove Ms. Urquhart-Bradley to bring forth more evidence suggesting that she lost the job opportunity with the non-competitor because of CEO Bouw's statements, the allegations she has made are minimally sufficient to survive a motion to dismiss. This means that she is entitled to take discovery on the factual questions surrounding her retaliation claims. After reading the Second Amended Complaint liberally and making all reasonable inferences in Ms. Urquhart-Bradley's favor, the Court must deny C&W's motion to dismiss Counts VI, VII, and VIII.

## CONCLUSION

Based on the foregoing, the Court will **DENY** C&W's motion to dismiss Counts VI, VII, and VIII of the Second Amended Complaint (ECF No. 67).

A separate Order accompanies this Memorandum Opinion.

Date: July 28, 2020

Royce C. Lamberth
United States District Court Judge