UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NICOLE URQUHART-BRADLEY,

    *Plaintiff*,

v.

CUSHMAN & WAKEFIELD, INC., *et al.*,

    *Defendants*.

Case No. 18-cv-2213 (RCL)

## MEMORANDUM OPINION

Before the Court is defendant Cushman & Wakefield's motion for a protective order precluding plaintiff from conducting her proposed Rule 30(b)(6) Deposition. ECF No. 92. Upon consideration of the parties' filings, ECF Nos. 92-2, 94 & 97, plaintiff's Second Amended First Notice of Rule 30(b)(6) Deposition, ECF No. 92-8, the entire record herein, and the relevant legal standards, the Court will **GRANT IN PART** and **DENY IN PART** defendant's motion, ECF No. 92. Though plaintiff may question a Cushman & Wakefield Rule 30(b)(6) representative about Subject 7 listed in her Second Amended First Notice of Rule 30(b)(6) Deposition, ECF No. 92-8, she may not question the Rule 30(b)(6) representative about any of the other subjects listed in her Notice.

### I. BACKGROUND

The Court assumes familiarity with the facts of this matter and recounts only the information necessary to resolve the present motion.[1] Plaintiff initiated this employment

---

[1] For a full recounting of the factual allegations in plaintiff's Amended Complaint and the procedural history leading up to the present motion, *see Urquhart-Bradley v. Mobley*, 964 F.3d 36 (D.C. Cir. 2020) (vacating and remanding this Court's dismissal of plaintiff's claims against Shawn Mobley, Cushman & Wakefield's Chief Executive Officer of the Americas, for lack of personal jurisdiction).

1

discrimination suit in September 2018. ECF No. 1. In January 2019, she filed an Amended Complaint alleging eight counts of race and gender discrimination (including aiding and abetting that discrimination) against Cushman & Wakefield ("defendant" or "C&W") and its Chief Executive Officer of the Americas, Shawn Mobley. ECF No. 17 at 15–22.

In February 2020, one month before fact discovery was set to close, plaintiff learned of new facts amounting to what she believes to be unlawful retaliation. ECF No. 51 at 9; *see* ECF Min. Order 2/23/20 (ordering that fact discovery be completed by March 2, 2020). Specifically, plaintiff discovered that shortly after she initiated this lawsuit, Cushman & Wakefield's Chief Executive Officer of Asia Pacific, Matthew Bouw, spoke to the recruiter of a company scouting plaintiff and caused plaintiff's "once promising candidacy" for a position with that company "to be placed on hold." ECF No. 51 at 9.

Armed with this newly discovered evidence, plaintiff moved for leave to file a Second Amended Complaint that included three new claims for retaliation in violation of 42 U.S.C. § 1981, 42 U.S.C. § 2000e *et seq.* (Title VII), and the D.C. Human Rights Act, D.C. Code § 2-1401 *et seq.* ECF No. 51. Plaintiff provided the following factual allegations to support these causes of action for retaliation: "On March 13, 2018," she claimed, "a colleague of the recruiter [considering plaintiff] reached out to Matthew Bouw, the former Global Head of Human Resources for [Cushman & Wakefield], who had recently been appointed C&W's CEO of Asia Pacific." ECF No. 51-3 ¶ 76. Although "CEO Bouw declined to provide a written statement about [plaintiff], he immediately offered to speak with the recruiter by phone." *Id.* at ¶ 78. And "[a]s a result of CEO Bouw's statements about Plaintiff, her promising candidacy for the lucrative position was placed on hold and never revived." *Id.* at ¶ 79. Plaintiff also alleged that "earlier in Mr. Bouw's tenure" at Cushman & Wakefield, "his female direct report, herself the Americas

Head of Human Resources, had left the Company after complaining that Mr. Bouw had acted inappropriately toward her, including by using a derogatory term specific to women to refer to her in front of colleagues." *Id.* at ¶ 77.

At the same time plaintiff sought leave to add these allegations to a Second Amended Complaint, she also moved for "a two-month extension of the fact discovery deadline in this case until May 2, 2020, for the limited purpose of pursuing the discovery outlined below in support of her retaliation claim[s]." ECF No. 51 at 9. She then explained that "the discrete actions of Mr. Bouw will require limited additional discovery that should be readily accomplished within the two-month window [she] proposed." *Id.* at 14. In support of her request, plaintiff argued that a limited extension of discovery was warranted because she had just discovered Mr. Bouw's actions. *Id.* at 12.

The Court granted plaintiff leave to file a Second Amended Complaint with her three new retaliation claims. ECF No. 64 ("May 2020 Order"). It also granted plaintiff's request for a "limited extension of the fact discovery deadline." *Id.* (capitalization altered). Accordingly, though discovery on plaintiff's discrimination claims closed on March 2, 2020, ECF Min. Order 2/13/20, the Court extended the fact discovery deadline on plaintiff's retaliation claims by two months. *Id.* After the Court entered its May 2020 Order authorizing additional limited discovery into plaintiff's retaliation claims, it has twice granted the parties' requests to further extend that deadline. *See* ECF No. 77 (entered 7/28/20); ECF No. 83 (entered 9/15/20). The first of those requests came from Cushman & Wakefield. ECF No. 72. The second was sought by joint motion. ECF No. 82.[2]

---

[2] After the Court granted plaintiff's motion to file a Second Amended Complaint, ECF No. 51, the D.C. Circuit vacated this Court's earlier dismissal of plaintiff's claims against Mr. Mobley for lack of personal jurisdiction. *See Urquhart-Bradley*, 964 F.3d at 40. Pursuant to the D.C. Circuit's instructions on remand, this Court ordered the parties to conduct jurisdictional discovery on Mr. Mobley's contacts with the District of Columbia. ECF Min. Order 8/26/2020. Instead of beginning jurisdictional discovery, however, the parties stipulated that this Court has personal jurisdiction over Mr. Mobley. ECF No. 82 at 2. Plaintiff then

Approximately one month before discovery on plaintiff's retaliation claims was set to close, plaintiff served her First Notice of Rule 30(b)(6) Deposition on defendant. ECF Nos. 92-2 at 4 & 94 at 6. In the weeks that followed, plaintiff twice amended her Notice. ECF Nos. 92-2 at 4–5 n.3 & 94 at 8 n.4. Her Second Amended First Notice of Rule 30(b)(6) Deposition lists sixteen "subjects of testimony" that cover a wide swath of topics, ranging from Cushman & Wakefield's practices regarding employee termination, retention, and compensation, to the company's diversity and inclusion initiatives. *See* ECF No. 92-8 at 4–7.

Defendant objected to plaintiff's Notice, and the parties met and conferred. ECF No. 92-2 at 4 n.3. When it became clear that the parties could not resolve their differences, defendant filed the present motion for a protective order. *See id.*; ECF No. 92. According to defendant, plaintiff's Notice of Rule 30(b)(6) Deposition exceeds the scope of the discovery authorized by the Court's May 2020 Order. ECF No. 92-2 at 1. Defendant also argues that the subjects of testimony contained in plaintiff's Notice are unreasonably cumulative and that preparing a corporate representative to testify about the subjects requested would be unduly burdensome. *Id.* at 1–2.

Plaintiff opposed the motion, arguing that the testimony sought in her Notice of Rule 30(b)(6) Deposition "is well within the scope of discovery authorized by [the] Court in its May 2020 Order extending the fact discovery deadline per Plaintiff's request and its subsequent Order granting the parties' Joint Motion to further extend that deadline." ECF No. 94 at 1 (internal citations omitted). Defendant replied. ECF No. 97. The motion is now ripe for consideration.

---

filed a Third Amended Complaint reinstating her claims against Mr. Mobley. ECF No. 86. Plaintiff's allegations of retaliation in the Second Amended Complaint, ECF No. 66, and Third Amended Complaint, ECF No. 86, are identical.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(c) provides that "[a] party . . . from whom discovery is sought may move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c). Upon a showing of good cause, district courts may "forbid[] discovery" by "issu[ing] an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* A protective order may be appropriate when: (i) "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," (ii) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action," or (iii) "the proposed discovery is outside the scope permitted by Rule 26(b)(1)," which allows for discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii) & 26(b)(1).

As the party seeking a protective order, defendant bears the burden of showing "good cause," which requires a "specific demonstration of facts to support [its] request." Fed. R. Civ. P. 26(c)(1); *Alexander v. FBI*, 186 F.R.D. 71, 75 (D.D.C. 1998). As indicated by the text of Rule 26(c), "good cause" exists "when justice requires the protection of a party or person from any annoyance, embarrassment, oppression, or undue burden or expense." *Alexander*, 186 F.R.D. at 75 (citing Fed. R. Civ. P. 26(c)).

## III. DISCUSSION

### A. The Court's May 2020 Order Authorized a Limited Extension of Fact Discovery Specifically Related to Plaintiff's Retaliation Claims

Before deciding whether the sixteen subjects listed in plaintiff's Notice of Rule 30(b)(6) Deposition warrant a protective order under the standards set forth in Rule 26, the Court must first decide whether those subjects exceed the scope of the Court's May 2020 Order authorizing a

5

limited extension of fact discovery. If so, the inquiry ends there; plaintiff may not conduct discovery that violates a Court Order.

The parties disagree about what the Court authorized in its May 2020 Order granting a limited extension of fact discovery, ECF No. 83. Defendant argues that the Court's Order authorized limited discovery into matters "expressly related" to plaintiff's retaliation claims. ECF No. 92-2 at 5. Plaintiff says that the May 2020 Order gave the parties additional time to conduct discovery on plaintiff's newly added retaliation claims *and* to continue discovery on her existing discrimination claims. ECF No. 94 at 5–6. Considering the breadth of information requested in plaintiff's Notice of Rule 30(b)(6) Deposition, it is no surprise that she argues as such.

But plaintiff is mistaken. When the Court granted plaintiff's request for a limited extension of fact discovery, it did so in reliance on plaintiff's explicit representation that she sought a modest two-month extension of fact discovery "for the limited purpose of pursuing the discovery outlined below in support of her retaliation claim[s]." ECF No. 51 at 9. She then added that "*the discrete actions of Mr. Bouw* will require *limited* additional discovery that should be readily accomplished" within two months. *Id.* at 14 (emphasis added). Relying on these representations, the Court granted plaintiff's request. ECF No. 64. The Court's May 2020 Order thus authorized further discovery only into matters specifically related to plaintiff's retaliation claims.

Plaintiff attempts to rewrite the procedural history of this matter by arguing that the Court's May 2020 Order gave plaintiff additional time to conduct discovery on her newly added retaliation claims *and* to continue discovery on her existing discrimination claims. *See* ECF No. 94 at 5–6. In support of this theory, plaintiff points to portions of her reply memorandum in support of her motion for a limited extension of fact discovery. *Id.* at 5 (citing ECF No. 56). There, she argued that "the limited discovery proposed by Plaintiff will permit her to explore both theories," i.e., the

6

theories that Mr. Bouw's conduct amounted to retaliation *and* "an extension of the discrimination that gave rise to her termination." ECF No. 56 at 12.

Yet six months *after* plaintiff filed her reply memorandum, the parties' joint motion seeking a second extension of the discovery deadline set in the May 2020 Order acknowledged that the Court had authorized a limited extension of discovery into plaintiff's retaliation claims only. *See* ECF No. 82 at 1. When describing the Court's first extension of the discovery deadline set in its May 2020 Order, the parties correctly noted that "fact discovery was extended until September 15, 2020 for the purpose of . . . conducting discovery on *Plaintiff's newly added retaliation claims.*" *Id.* (emphasis added). Plaintiff cannot now recant this representation and rely on arguments made in an earlier-filed reply memorandum to say that the Court authorized the parties to reopen discovery into plaintiff's discrimination claims. Furthermore, as explained above, the Court granted plaintiff's initial request for an extension of fact discovery, ECF No. 51, in reliance on plaintiff's representation that "*the discrete actions of Mr. Bouw* will require *limited* additional discovery that should be readily accomplished" within two months. ECF No. 51 at 14 (emphases added). Thus, pursuant to the Court's May 2020 Order, plaintiff may elicit testimony from a Cushman & Wakefield Rule 30(b)(6) representative only on matters specific to Mr. Bouw's discrete actions that underlie her retaliation claims.

### B. Subjects 1–6, 8 & 10–16 Seek Testimony That Exceeds the Scope of The Court's May 2020 Order Authorizing Limited Discovery on Plaintiff's Retaliation Claims

To decide whether the sixteen subjects of testimony requested in plaintiff's Notice of Rule 30(b)(6) Deposition relate specifically to plaintiff's retaliation claims, the Court must consider plaintiff's theory of retaliation. To show retaliation under 42 U.S.C. § 1981, Title VII, and the D.C. Human Rights Act, plaintiff must establish that: (1) she engaged in a protected activity, (2) the

defendant took an adverse action against her, and (3) that a causal connection exists between the protected activity and the adverse action. *Bryant v. Pepco*, 821 F. Supp. 2d 304, 307 (D.D.C. 2011) (42 U.S.C. § 1981); *Dieng v. Am. Institutes for Research in Behavioral Scis.*, 412 F. Supp. 3d 1, 8 (D.D.C. 2019) (Title VII); *Propp v. Counterpart Int'l*, 39 A.3d 856, 863 (D.C. 2012) (D.C. Human Rights Act). As explained above, plaintiff's theory of retaliation is that: (1) she sued Cushman & Wakefield, (2) two months later, Mr. Bouw gave plaintiff a "negative reference" when speaking on the phone with a recruiter from another employer considering plaintiff, and (3) "[a]s a result of CEO Bouw's statements," plaintiff's "promising candidacy for the lucrative position was placed on hold and never revived." Third Am. Compl., ECF No. 86 at 4 & 17–18.

Yet Subjects 1–6, 8 and 10–16 listed in plaintiff's Notice of Rule 30(b)(6) Deposition seek information that far exceeds the narrow scope of evidence specifically related to these allegations. The Court will address each in turn.

    *i. Subjects 1–6*

Subjects 1–6 seek testimony about Cushman & Wakefield's policies and practices for handling employee termination (Subjects 1, 2 & 6), employee retention (Subject 3), and compensation or contract adjustments (Subjects 4 & 5). Those Subjects seek testimony on:

1. Defendant's knowledge of its policies, procedures, and practices concerning *employee termination*, whether voluntary or involuntary, from 2015 through the present for C&W's executive-legal employees in Valuation & Advisory and employees in its United States and Americas leadership (including all service-line and geographic region heads), including the submission of resignations in writing; the coding of terminations, including that of Ms. Urquhart-Bradley, as voluntary or involuntary for any equal employment opportunity analyses; and any policies, procedures, and practices that Defendant followed for Ms. Urquhart-Bradley's termination.

2. Defendant's knowledge concerning any *terminations* from 2015 through the present of C&W's executive-level employees in Valuation & Advisory and employees in its United States and Americas leadership (including all service-line and geographic region heads), including the reasons for such terminations,

8

the race and gender of each such employee terminated, and whether C&W sought to enforce a non-compete against any of these individuals.

3. Defendant's knowledge of its policies, procedures, and practices concerning *employee retention* from 2010 through the present for C&W's executive-level employees in Valuation & Advisory and employees in its Americas leadership (including all service-line and geographic region heads).

4. Defendant's knowledge concerning its handling of any request for a *compensation adjustment* and/or an *adjustment to an employee's contract* made by C&W's employees in its United States and Americas leadership (including all service-line and geographic region heads) from 2015 through the present, including decisions made in response to such requests and the rationale for those decisions.

5. Defendant's knowledge concerning the handling by Shawn Mobley, John Santora, Michelle Hay, or Todd Schwartz of any request for a *compensation adjustment* and/or an *adjustment to an employee's contract* made by a C&W employee who was reporting to them, from 2015 to the present, including decisions made in response to such requests and the rationale for those decisions.

6. Defendant's knowledge concerning any oral communications between any of C&W's employees or clients and Shawn Mobley, Todd Schwartz, John Santora, Richard Cenkus, Matthew Bouw, Brett White, or any member of C&W's United States, Americas or Global leadership concerning the reason(s) for Ms. Urquhart-Bradley's *termination*, including such communications between Shawn Mobley and Melanie Kirkwood Ruiz but excluding such communications between only Shawn Mobley, Todd Schwartz, John Santora, and Michelle Hay.

ECF No. 92-8 at 4–5 (emphases added).

Notably, plaintiff's retaliation claims are not based on any of the types of employment actions referenced in Subjects 1–6. Plaintiff does not allege that Cushman & Wakefield retaliated against her by terminating her, failing to retain her, unfairly compensating her, or otherwise unfairly adjusting her employment contract. Instead, she claims that Mr. Bouw retaliated against her by "[t]orpedoing" her prospect with another employer. Third Am. Compl. at 17. Thus, information on Cushman & Wakefield's reasons for terminating, failing to retain, setting the compensation, or otherwise unfairly adjusting the employment contract of plaintiff or any other

9

employee does not specifically relate to Mr. Bouw's actions that make up plaintiff's retaliation claims.

Plaintiff argues that the testimony sought in Subjects 1–6 is "highly relevant to the conduct by Mr. Bouw" because "Mr. Bouw testified that he was involved in discussions regarding retention and contract adjustments for [plaintiff's] predecessor and key comparator." ECF No. 94 at 9. Again, if plaintiff alleged that the adverse action taken against her was her *termination* or an *unfair contract adjustment*, evidence about the retention and contract adjustments for plaintiff's "predecessor and key comparator" may specifically relate to her retaliation claims. But, again, that is not plaintiff's theory of retaliation. In sum, because Subjects 1–6 seek information that does not specifically relate to plaintiff's retaliation claims, she may not question a Cushman & Wakefield Rule 30(b)(6) representative about them.

  *ii. Subject 8*

The Court further finds that the testimony elicited in Subject 8 is not specifically related to plaintiff's retaliation claims. Subject 8 requests testimony on:

> 8. Defendant's knowledge concerning all communications between Ms. Urquhart-Bradley's counsel and C&W's counsel relating to legal claims from January 2018 through March 2018.

ECF No. 92-8 at 5.

At first glance, this information may seem pertinent to the causation element of plaintiff's retaliation claims. To show causation, plaintiff must show that she was retaliated against because she sued Cushman & Wakefield. *See, e.g., Bryant*, 821 F. Supp. 2d at 307. Yet because plaintiff alleges that *Mr. Bouw* retaliated against her, the only knowledge specifically related to her retaliation claims is *Mr. Bouw's* knowledge of her lawsuit against Cushman & Wakefield.[3] And

---

[3] Plaintiff repeats the conclusory allegation that "*Defendant C&W* has retaliated against Mr. Urquhart-Bradley in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, as amended by the

because Mr. Bouw is not Cushman & Wakefield's counsel, information about counsel's knowledge of the claims does not specifically relate to plaintiff's retaliation claims.

*iii. Subjects 10–14*

Subjects 10–14 seek information about Cushman & Wakefield's diversity and inclusion initiatives writ large, its investigations into discriminatory barriers at the company, and communications among participants in the African-American women's affinity group at Cushman & Wakefield. Those Subjects read:

10. Defendant's knowledge concerning the "at least dozen examples" of women and African-American men at Cushman & Wakefield cited by Adam Stanley in reference to a news article concerning discriminatory barriers to the advancement of women to executive-level roles at corporations in the United States, and any investigation conducted by Michelle Hay and/or Janice O'Neill into these circumstances after Adam Stanley reported them to Ms. Hay and Ms. O'Neill.

11. Defendant's knowledge concerning any communications among participants in the African-American women's affinity group at the Company about Ms. Urquhart-Bradley's departure from Cushman & Wakefield.

12. Defendant's knowledge of the purpose, execution, and results of any effort by Cushman & Wakefield to collect data about diversity and employee experiences at the Company, including through the Employee Pulse Survey.

13. Defendant's knowledge of Cushman & Wakefield's use of data from external sources, industry-wide or otherwise, (including that source of that data) to benchmark its diversity and inclusion initiatives.

14. Defendant's knowledge concerning the development and implementation of Cushman & Wakefield's diversity-related initiatives, including its Diversity & Inclusion Strategic Plan, and its decision to "differentiate" the company by "promoting gender diversity."

ECF No. 92-8 at 6.

---

Civil Rights Act of 1991 ('Title VII'), by going out of its way to undermine Ms. Urquhart-Bradley's employment opportunities as a result of her protected activities." Third Am. Compl. ¶¶ 162, 168 & 174 (emphasis added). Yet the only facts she alleges to support this legal conclusion are those about the actions of *Mr. Bouw*. *See id.* at ¶¶ 20, 82–88. Thus, evidence that Cushman & Wakefield's counsel knew of plaintiff's lawsuit does not specifically relate to plaintiff's retaliation claims.

11

The information sought by Subjects 10–14 greatly exceeds the narrow scope of discovery authorized in the Court's May 2020 Order. ECF No. 64. Though this information may well relate to plaintiff's claims for *gender and race discrimination*, it is not specific to Mr. Bouw's conduct that makes up plaintiff's *retaliation claims*.

Plaintiff disagrees. She argues that the information sought in Subjects 10–14 relates to her retaliation claims because "Mr. Bouw in his capacity as Global Chief Human Resources and Strategy Officer, was responsible for diversity and inclusion across Cushman & Wakefield . . . which included the Americas through almost all of Plaintiff's tenure" at the company. ECF No. 94 at 9 (internal quotation marks omitted). And, she argues, plaintiff "made clear in her Second Amended Complaint" that "Mr. Bouw's own past actions with regard to the treatment of women at Cushman & Wakefield is factually relevant to her retaliation claims." *Id.* (citing ECF No. 66 ¶ 77).

Mr. Bouw's past actions regarding the treatment of women at Cushman & Wakefield may be relevant to plaintiff's retaliation claims. But that is not the information sought in Subjects 10, 11, 12, 13, or 14. First, whether Michelle Hay or Janice O'Neill investigated circumstances causing discriminatory barriers at Cushman & Wakefield (Subject 10) says nothing about Mr. Bouw's past actions toward female employees. Second, communications among participants in the African-American women's affinity group at Cushman & Wakefield about the reasons for plaintiff's departure (Subject 11) do not specifically relate to Mr. Bouw's actions toward women because, according to plaintiff, it was *Mr. Mobley*, not Mr. Bouw, who fired plaintiff. *See* Third Am. Compl. ¶ 70. Third, even if Mr. Bouw was in fact responsible for diversity and inclusion across Cushman & Wakefield during plaintiff's tenure at the company (Subjects 12, 13 & 14), the company's efforts to collect data about employee experience, benchmark its own diversity and inclusion practices to

12

those of other companies, and implement diversity and inclusion initiatives, would not reflect Mr. Bouw's *personal* actions toward female employees. Thus, because the information sought in Subjects 10–14 does not specifically relate to plaintiff's retaliation claims, plaintiff is not entitled to depose a Cushman & Wakefield Rule 30(b)(6) representative about them.

    *iv. Subjects 15 & 16*

Next, Subjects 15 and 16 seek testimony related to two of Cushman & Wakefield's affirmative defenses. Those Subjects seek testimony on:

15. Defendant's knowledge concerning all facts supporting or rebutting its affirmative defense that it has purportedly engaged in good faith efforts to comply with federal, state, and local anti-discrimination laws.

16. Defendant's knowledge concerning all facts supporting or rebutting its affirmative defense that its alleged or actual conduct purportedly does not rise to the level necessary to sustain a punitive damages award or instruction.

ECF No. 92-8 at 6–7.

One need only compare these requests to plaintiff's representation that she intended to take "limited discovery" into Mr. Bouw's "discrete actions" to see that they exceed the scope of the Court's May 2020 Order. ECF No. 51 at 14. The information elicited in Subjects 15 and 16 pertains to plaintiff's suit more broadly, not the contents of Mr. Bouw's phone conversation with the recruiter or the reasons why Mr. Bouw said what he did. Indeed, defendant raised these affirmative defenses in its Answer, which it filed in November 2018. ECF No. 10 at 9. This means plaintiff had fifteen months—from December 2018, when discovery began, until March 2020, when discovery on her discrimination claims closed—to conduct discovery on these affirmative defenses. *See* ECF No. 16 (meet and confer statement filed 12/26/18); ECF Min. Order 2/13/20 (ordering that fact discovery be completed by March 2, 2020). Thus, plaintiff may not depose a Cushman & Wakefield Rule 30(b)(6) representative on Subjects 15 and 16 of her Notice.

### C. Subject 7 Seeks Information That Is Specifically Related to Plaintiff's Retaliation Claim and Does Not Warrant Protection Under Rule 26

Unlike Subjects 1–6, 8, and 10–16, Subject 7 elicits testimony that specifically relates to plaintiff's retaliation claims. Subject 7 requests testimony on:

> 7. Defendant's knowledge of its policies, procedures, and practices regarding whether and to what extent C&W employees may provide references for current and former employees.

ECF No. 92-8 at 5.

The Court finds that this testimony could produce evidence at the heart of plaintiff's retaliation claims. For example, imagine Cushman & Wakefield had a formal policy of giving negative references to former employees who sue it. Or perhaps it had an informal and unspoken practice of doing so. This hypothetical evidence could shed light on what Mr. Bouw said to the recruiter and why he said it. Thus, the information elicited in Subject 7 is specifically related to plaintiff's retaliation claims.

This is not the end of the inquiry, however, as the Court must also consider whether disclosure of the information sought in Subject 7 runs afoul of Rule 26. The Court finds that it does not. Defendant has not met its burden of showing that the testimony sought in Subject 7 is "unreasonably cumulative or duplicative," "can be obtained from some other source that is more convenient, less burdensome, or less expensive," or that plaintiff has already "had ample opportunity to obtain the information" through some other channel of discovery in this matter. Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii); *see Alexander*, 186 F.R.D. at 75. In fact, defendant does not provide *any* facts specific to Subject 7. *See generally* ECF No. 92-2. Instead, it apparently concedes that the information sought in Subject 7 is appropriate under Rule 26. *Id.* at 6. Thus, the Court will allow plaintiff to depose a Cushman & Wakefield Rule 30(b)(6) representative on the information sought in Subject 7.

### D. Subject 9 Seeks Information Unnecessarily Cumulative of Existing Discovery

Finally, Subject 9 seeks testimony regarding:

> 9. Defendant's knowledge concerning which of its employees received any communication(s) relating to Ms. Urquhart-Bradley's legal claims from January 2018 through March 2018.

ECF No. 92-8 at 5.

Subject 9 specifically relates to plaintiff's retaliation claims to the extent it seeks information about *Mr. Bouw's* knowledge of plaintiff's lawsuit. Nevertheless, the Court finds that allowing plaintiff to depose a Cushman & Wakefield Rule 30(b)(6) representative about Mr. Bouw's knowledge of the lawsuit would be "unreasonably cumulative or duplicative" of existing discovery in this suit. Fed. R. Civ. P. 26(b)(2)(C)(i). According to defendant, plaintiff has already deposed Mr. Bouw. ECF No. 92-2 at 12. And in that deposition, plaintiff questioned him about his knowledge of plaintiff's legal claims. *Id.* Plaintiff does not refute this representation. Thus, because plaintiff has already had the opportunity to ask Mr. Bouw about his knowledge of plaintiff's suit against Cushman & Wakefield, the Court will grant defendant's motion for a protective order with respect to Subject 9. *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

### IV. CONCLUSION

For the reasons explained above, the Court will **GRANT IN PART** and **DENY IN PART** defendant's motion for a protective order, ECF No. 92, precluding plaintiff from conducting her proposed Rule 30(b)(6) deposition. Plaintiff may depose a Cushman & Wakefield Rule 30(b)(6) representative about Subject 7 listed in her Second Amended First Notice of Rule 30(b)(6) Deposition, ECF No. 92-8. Defendant's motion for a protective order, ECF No. 92, is **GRANTED** with respect to all other subjects listed in the Notice.

An accompanying Order, consistent with this Memorandum Opinion, shall follow.

Date: December 21, 2020

_____
Hon. Royce C. Lamberth
United States District Judge